EMMA. A. PIERSON, *Appellant,* vs. EDWIN G. REINHARDT,
individually doing business as EDWIN G. REINHARDT
MANUFACTURING COMPANY, *Appellee.*

Division A.

Opinion filed April 4, 1931.

Petition for rehearing denied May 26, 1931.

Robert M. Thomson, for Appellant;

Henry K. Gibson, for Appellee.

BUFORD, C.J.—The appeal in this case is from an order overruling a demurrer of the defendant in the court below to the bill of complaint.

The bill of complaint was one to subject the separate property of a married woman to the payment of an obligation alleged to have been incurred with her sanction and consent, for materials furnished and used for the benefit of her separate statutory property specifically described in the bill of complaint. The bill of complaint was filed on the 8th day of February, 1929, and it is alleged that the furnishing of the material was completed on the 26th day of June, 1926. It is alleged that the defendant, Bertha E. Pierson, was the grantee in a warranty deed from Emma A. Pierson and her husband, Everett H. Pierson, dated December 29th, 1927, and recorded January 19th, 1928; that the deed to Bertha E. Pierson is void as against the complainant because it was executed without valuable consideration.

The bill of complaint does not show that any notice of intention to claim lien was filed in the office of the Clerk of the Circuit Court. The complainant claims his

right of action under the provisions of Sec. 2, Article XI of the Constitution of Florida. The defendant's demurrer presents the question as to whether or not in the enforcement by the complainant of his rights under the section of the Constitution above referred to, he is confined to the statutory procedure enacted for that person. The record shows that the complainant furnished material for the improvement of a building situated on real estate which was the separate property of a married woman and that such material was furnished with her knowledge and assent. Section 2854 R.G.S., 4551 C.G.L., definitely prescribes the manner in which one so furnishing such materials under such conditions may enforce his claim against the property improved. It is needless for us to quote this section because it is available to the Bench and the Bar. The last paragraph of the section mandatorily requires the filing of the notice of lien at most within three months after the entire performance of the labor or the entire furnishing of the materials. Though it may be filed for record at any time within that period, after a contract in writing has been entered into. This part of the section also provides that suits in equity to enforce the rights of parties performing labor or furnishing materials as provided for in this section must be brought within twelve months from the filing of the notice of the lien.

The above mentioned provisions of the statute are not in conflict with the organic law, but provide a definite method for the application of the organic law in such cases.

The order overruling the demurrer should be reversed, with directions that the bill of complaint be dismissed. It is so ordered.

Reversed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.

### ON PETITION FOR REHEARING.

BROWN, J.—Upon further consideration of this case on petition for re-hearing, I have reached the conclusion that the former opinion and judgment in this case should be modified. As it stands it would require one who had dealings in privity with the owner to file a notice of lien under Sec. 4551 C.G.L. in order to preserve the right to charge the separate property of a married woman with the payment of an obligation for labor and material used with her knowledge or assent in the construction of a building upon her property.

I do not believe it was the purpose of this statute to give a married woman any additional right or to impair or unduly limit the right of one furnishing labor and material in the construction of a building on her separate property with her knowledge and consent. I think the real purpose of this statute was not to protect the married woman in such cases but to afford protection to one so dealing with her as against the claims of third parties accruing after the filing of the notice povided for in that statute.

This bill was filed under Sec. 2 of Art. 11 of the Constitution. This section was designed for the protection of persons dealing with a married woman with reference to her separate property. It created rights against a married woman which did not exist theretofore, or under the common law. It provided that a married woman's separate real or personal property may be charged in equity and sold, to enforce the pay-

ment of certain obligations with reference to · her separate property therein mentioned, one of which is "for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent."

Following this is section 3 which reads: "The Legislature shall enact such laws as shall be necessary to carry into effect this Article."

Strictly speaking, section 2 does not ·in *haec verba* create a lien, but a right which may be enforced against the property by a bill of equity. Smith vs. Gauby, 43 Fla. 142, 30 So. 383. In the case of Nutt v. Codington, 34 Fla. 77, it was held that while a married woman is incapable of making a contract for labor performed or material furnished on her separate property that would bind her in a personal judgment, her separate property might be charged under this section of the constitution, regardless of whether the statute as to mechanic's and material men's lien created a lien or not which was left undecided. This section was further construed in Micou vs. McDonald, 55 Fla. 776. It was held in that case that the effect of this section is to remove from married women, under certain restrictions, the common law disability of coverture in the cases therein enumerated, and to enable her in such cases to assume obligations that can be charged in equity upon her separate property.

In Lerch v. Varns, 61 Fla. 672, it was very plain that it was not the intention of Article 11 of the Constitution to prevent the Legislature from Making laws dealing with the contractual rights and powers of married women in other respects, so long as there was no conflict with

the provision of such Article. It was said in the opinion of JUSTICE HOCKER in that case:

"It will be observed that the first section contains no limitations upon the power which might be conferred on her by the legislature of disposing of her separate property, except that it is exempted from liability for the debts of her husband, without her consent given in some instrument in writing, executed according to the respective conveyances by married women. The second section gives to the court of equity exclusive jurisdiction of certain kinds of obligations which she may make when there is an attempt to enforce their payment from her separate property. Jurisdiction of these, therefore, cannot be conferred by the legislature on a court of law. Micou v. McDonald, 55 Fla. 776, text 780, 46 So. Rep. 291. Otherwise than as thus indicated the constitution contains no limitations upon the legislative power in the making of laws dealing with the contractual rights which it may confer upon married women, and with their control and disposition of separate property. These matters are left by the constitution to legislative action and control."

Another case showing the disposition of this court to give a liberal construction to Art. 11 is the case of Nadel v. Weber, 70 Fla. 218, in which the opinion was written by MR. JUSTICE ELLIS. See also Blood v. Hunt, 97 Fla. 551, 121 So. 886, in which the general subject is ably reviewed by MR. JUSTICE WHITFIELD.

It would seem from the general principles enunciated by MR. JUSTICE TERRELL in Jones v. Carpenter, 90 Fla. 407, and in Craven v. Hartley, decided at the present term, and in Philips v. Atwell, 76 Fla. 480, 80 So. 180, that one who has furnished labor and material for the improvement of a married woman's separate prop-

erty with her knowledge and consent, has something in the nature of an inchoate equitable lien. It was said in that case that an equitable lien is ''a right of special nature over the thing, which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds applied upon the demand of the creditor in whose favor such lien exists.''

Section 4551, C.G.L. is derived from two legislative acts, one adopted in 1915, and the other, amendatory thereto, adopted in 1923. Neither of these acts creates any mechanic's or material man's lien upon the separate property of a married woman. It seems to have been the main purpose of both these acts to protect the inchoate equitable lien created by the constitution in behalf of any person furnishing labor or material used upon the separate statutory property of a married woman with her knowledge or assent, as against persons acquiring claims of a like nature, or purchasing the property from her, subsequent to the filing of the *''lis pendens''* provided for by the first act, or the ''notice of lien'' provided for in the second act.

Surely it was not the purpose of either of these statutes to enable a married woman to escape the liability created by section 2 of Article 11 merely because of a failure of a person dealing directly with her to file such notice. It is true that any one desiring to secure the protection against the rights of third parties which the filing of the notice under the statute provides, must comply with the statute, but I do not think that the statute should be construed to give a married woman any greater protection than is afforded her by the constitutional provision as against a person dealing directly with her.

Our general statute with reference to mechanic's and material men's liens (Sec. 5380 C.G.L.) provides that, *as against the owner* of property upon which a lien is claimed, *the lien shall be acquired by any person in privity with such owner by the performance of the labor or the furnishing of the material;* and that *as against purchasers and creditors* of such owner *without notice,* such lien shall be acquired upon real estate only from the time of the record in the office of the Clerk of the Circuit Court of the county where the real estate lies of a notice of such lien, which notice must be filed within three months after the entire performance of the labor or the furnishing of the material. Different rules apply to persons not in privity with the owner, which are not material here. See Sec. 5381 C. G. L. And Sec. 5393 C. G. L. provides that ''when there has been no record of a notice of lien, suit to enforce lien (if it exists without such record) must be brought within twelve months from the performance of the work or the furnishing of the material, and if there has been such record, the suit must be brought within twelve months from the time of such record.''

So, under these general statutes regarding mechanic's liens, the filing for record of notice of lien is not necessary to give validity to the lien as against the owner in favor of a person who has dealt directly with the owner, in the furnishing of labor and material. Why should there be any constructive notice, in such a case, to such owner? He has already had actual notice. And the same principle would apply in this case. The only reasonable object of filing the notice of record under both statutes is to give notice to persons other than the owner who would not otherwise have it.

To require one who has furnished labor and material to a married woman with her knowledge or assent, and who has acquired the right to charge her property therefor under section 2 of Art. 11, to file a notice of record before he would have the right to proceed in equity to charge such married woman's property, would, if the statute is construed to make such requirement, amount to an unreasonable denial of a right given by the constitution, and would therefore have to be eliminated from the statute. I do not mean to say that the statute could not have required suit to be brought against a married woman, within a reasonable limit of time after the labor was performed or the materials furnished. But that is not the question here.

The title Chapter 6926 of the Laws of 1915 reads as follows:

"AN ACT to Provide for and Filing of a Lis Pendens Against the Separate Statutory Property of Married Women in Favor of Persons Performing Labor of Furnishing Materials in the Construction, Alteration or Repair of Buildings Upon Their Separate Statutory Property, and Providing for the Effect of Filing of such Lis Pendens."

This Chapter was embraced in the Revised General Statutes of Florida as Section 2854, being the second section of Chapter 20, Division 2, Title I, R. G. S. This Chapter is entitled "Lis Pendens" and consists of only two sections, of which said Chapter 6926 composed the second section.

The title of the act now appearing as Section 4551 C.G.L. being Chapter 9301 of the Laws of 1923, comprises the second section of Chapter 20, 2nd Div. Title I of Comp. Gen. Laws of 1927, also entitled "Lis Pendens." This shows that the revisers of the Rev. Gen. Stats of

1920 and the compilors of the Comp. Gen. Laws of 1927 did not consider that this statute created any lien but that it merely provided for the filing and recording of a notice which would protect the laborer or material man against the claims of third parties. And in this I think the revisors and compilers were correct.

One change made by the Act of 1923 in section 2854 of Rev. Gen. Stats., which was derived from the Act of 1915, is that it changes the word "lis pendens" to "notice of lien." In the first section of the Act it provides that such notice "*may*" be filed. The last section of the Act, being the last paragraph of section 4551 uses the word "must" instead of "may," but it is so used in connection with the prescribing of the time within which the notice must be filed, and, construed in connection with the remainder of the act, it means that the notice *must* be filed within three months after the performance of the labor or the furnishing of the material in order to obtain the protection afforded by compliance with the act to parties furnishing the labor or the material as against the claims of third parties. However, the last sentence of this section reads:

"Suits in equity to enforce the rights of parties performing labor or furnishing materials as provided for herein, must be brought within twelve months from the filing of notice of lien."

But this also should be construed in like manner. That is, construing it in the light of the entire act, it should be construed to mean that suit must be brought within twelve months from the filing of the notice in order to secure protection as against other parties who have furnished labor or materials to the owner or pur-

chased from the owner, for, as we have seen, as against the owner, no filing of notice is necessary by one who has dealt directly with her, and the statute cannot reasonably be construed to require such. As the limitation of time for bringing suit is based on the time of filing notice, this limitation would likewise be inapplicable in such a case as this. Suppose a case where there are no other claimants, and the party who has furnished the labor and material to the married woman files a bill within the three months period, to charge her separate property under the constitutional provision, no notice of lien having been filed, could this statute be invoked as a defense to such a suit? I think not.

Our general statutes creating mechanic's and material men's liens and authorizing an executory contract to be followed by a personal judgment or decree, have never been construed by this court to apply to the separate property of married women, there being no express provision showing such intent. Agin v. Gainesville Planing, etc. Co., 80 Fla. 678, 87 So. 63; Thrasher v. Doig, 18 Fla. 809; O'Neil v. Percival, 20 Fla 937; Smith v. Gauby, 43 Fla. 142, 30 So. 383; McFarlane v. Southern Lumber & Supply Co., 47 Fla. 271, 36 So. 1079.

Strictly speaking, as we have said above, section 2 of Art. XI does not create a *lien,* in the strict legal sense of that term, upon the separate property of married women. Such was the holding in the case of Smith v. Gauby, *supra.* A careful reading of the able opinion of Mr. Justice Carter in that case sheds considerable light on the questions here involved.

As above shown, section 4551 C. G. L. does not create a lien, and the failure to file notice was immaterial so far as defendant Emma A. Pierson was concerned. How-

ever, it might be material as concerns Bertha Pierson, her grantee, if the conveyance to her was a valid one. If the conveyance to Bertha Pierson was fraudulent and void as against the complainant, and was not sufficient in equity to transfer the title to her, the bill could be successfully maintained against defendant Emma A. Pierson in spite of the failure to file the notice provided for in section 4551. However, the allegations of the bill as regards the conveyance to Bertha Pierson are very vague and general, consisting largely in mere general conclusions of the pleader, and are hardly sufficient to show that the title had not legally or in contemplation of equity passed out of Emma A. Pierson. For this reason I think that the demurrer should have been sustained, and that the conclusion reached in the original opinion, that the court erred in overruling the demurrer, was correct, and the judgment of reversal should stand except in so far as it requires the bill to be dismissed. As I view it, the opinion heretofore rendered should, however, be modified as hereinabove pointed out, and the order appealed from should be reversed, with leave to the complainant to amend his bill.

I therefore favor granting the petition for rehearing.