St PETERSBURG LUMBER COMPANY, a corporation, successor to ST. PETERSBURG NOVELTY WORKS, a corporation, v. MAY BELLE ALLISON RISLEY, et vir.

173 So. 832.
Division A.
Opinion Filed April 12, 1937.

*W. F. Way,* for Appellant;

*Hampton, Bull & Crom,* for Appellees.

BUFORD, J.—The appeal in this case brings for review order dismissing bill of complaint on motion.

The bill of complaint was filed on August 26, 1936. The bill of complaint alleges that the appellee, May Belle Allison, and her husband, W. E. Allison, on February 15, 1933, executed to St. Petersburg Novelty Works one promissory note for the sum of $200.00 payable thirty days after date, and one note for $800.00 due one year after date, with interest at 8% from maturity; that the charter of St. Petersburg Novelty Works was on April 4, 1936, amended to change the name of the corporation to St. Petersburg Lumber Company and St. Petersburg Lumber Company then became the owner and holder of the notes above mentioned.

That at the time of the execution of the notes May Belle Allison was the owner in fee simple of certain parcel of land in the City of St. Petersburg, Pinellas County, Florida,

described in the bill of complaint; that such tract of land on the 15th day of February, 1933, was the separate property of May Belle Allison and had been her separate property for some years prior to said date.

"That the said May Belle Allison (now Risley) being the owner of said real estate during the year 1932, desiring and intending to improve said real estate by the repair of the building situated thereon and it being necessary to purchase building materials with which to make such improvements authorized her son, Elmore Allison, to purchase same and the said Elmore Allison acting for and in behalf of the said May Belle Allison purchased from the St. Petersburg Novelty Works building material to the amount of ____ Dollars; that said building material was used in and on the improvements placed upon said lot and did enhance and make more valuable said property and did increase the value of the separate property of the said May Belle Allison. That during and while said improvements were being erected on said property said May Belle Allison was daily present and saw such improvements being made and did not make any objections thereto."

It is further alleged: "that when said improvements were completed, after deducting the amounts of money previously paid there was a balance due to St. Petersburg Novelty Works the sum of $1000.00 and thereupon the said May Belle Allison joined by her husband W. E. Allison, made, executed and delivered to said St. Petersburg Novelty Works the notes aforesaid."

And it is further alleged: "Plaintiff further shows that W. E. Allison, one of the makers of the notes aforesaid and husband of May Belle Allison, died on the_____day of _____1934; and thereafter the said May Belle Allison intermarried with her co-defendant, _____Risley, the said

May Belle Allison and May Belle Risley being one and the same person."

It is further alleged: "Plaintiff further shows to the court that the aforesaid note, dated February 15, 1933, for the sum of Two Hundred ($200.00) Dollars, contains a credit of One Hundred ($100.00) Dollars which was paid on the 27th day of March, 1934, and there is now due and owing on said note the principal sum of $100.00 with interest thereon to the 15th day of August, 1936, of $38.31, or a total of $138.31. That said defendant has failed to make any payment on the other note of $800.00, the full amount of said principal being due with interest to the 15th day of August, 1936, amounting to $160.00 or a total of $960.00 on said note; said defendant being now indebted to plaintiff in the full and just sum of $1098.31 payment of which has often been demanded and said defendant May Belle Risley (formerly May Belle Allison) has failed and refused to pay the same or any part thereof."

It is further alleged: "Plaintiff avers that the credit extended by it furnishing material for the improvement of said realty was solely and entirely based upon the fact that the defendant May Belle Risley (formerly May Belle Allison) was the sole owner of said lot of land and that same was her separate estate, and plaintiff did not demand nor did it receive any security for the payment of said debt."

Upon these allegations the appellant sought to charge the separate property of May Belle Risley, formerly May Belle Allison, as described in the bill of complaint, for the payment of the balance due on the obligation.

The allegations do not meet the conditions contemplated by Section 2 of Article XI of the Constitution to authorize the separate real or personal property of a married woman to be charged in equity and sold for money or thing due

upon an agreement made by her in writing for the benefit of her separate property.

The allegations of the bill show that the complainant relied upon a note executed by the husband and wife for the payment of material furnished some months after the materials were furnished. The allegations as to what or when materials were furnished is vague, indefinite and uncertain and only show that some materials of some sort were furnished sometime during the year of 1932, while the note was given on February 15, 1933. To come within the purview of this provision of the Constitution, the agreement in writing made by the married woman for the benefit of her separate property must be contemporaneous with the furnishing of the "money or thing due" or the agreement in writing may ante-date the furnishing of the "money or thing due" for the benefit of her separate estate.

Appellant relies on the case of Beno v. Smith, 103 Fla. 282, 137 Sou. 248, in which case we held:

"While a promissory note of a married woman not a free dealer is not a legal predicate for a personal judgment or decree against her, such a note with competent evidence as to the circumstances under which the note was executed and a due consideration received by her, may constitute an agreement in writing for the benefit of her separate property, for which the married woman's separate real or personal property may be charged in equity and sold under Section 2, Article XI of the Constitution.

In the instant case, however, the allegations as to the note and the circumstances under which the note was executed do not meet the requirements to constitute an agreement in writing for the benefit of her separate estate for which the married woman's separate real or personal prop-

erty may be charged in equity and sold under Section 2, Article XI, of the Constitution.

In Smith v. Chapman, 116 Fla. 576, 156 Sou. 544, we said: "The promissory notes, it appears, were given by the married woman owner of the grove during the course of performance of the work, and in consideration thereof. But it is neither claimed nor shown that the notes were given for any other purpose than 'to represent the money due for * * * services and materials furnished on this orange grove.'

"The Constitution provides that the separate property of a married woman may be charged in equity and sold, or the uses, rents and profits thereof sequestered for materials used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, bestowed thereon with her knowledge or consent. Const. of Fla. Arct. XI, Sec. 2; Harwood v. Root, 20 Fla. 940. But this section does not give a married woman capacity to make a contract for labor performed or material furnished upon her separate property that will bind her in a personal judgment. Nutt v. Coddington, 34 Fla. 77, 15 Sou. Rep. 667; Thrasher v. Doig, 18 Fla. 809; Agin v. Gainesville Planing & Coffin Co., 80 Fla. 679, 87 Sou. Rep. 63.

"A married woman's separate real or personal property may also be charged in equity and sold for agricultural or other labor bestowed thereon with her knowledge and consent. Livingston v. Powers, 85 Fla. 254, 95 Sou. Rep. 622; King v. Hooton, 56 Fla. 805, 47 Sou. Rep. 394. But a married woman not a free dealer has no general contractural capacity in this state, so the promissory note of a married woman is *per se* void. Thrasher v. McElroy, 90 Fla. 372, 106 Sou. Rep. 79; Blood v. Hunt, 97 Fla. 551, 121

Sou. Rep. 886; Deno v. Smith, 103 Fla. 282, 137 Sou. Rep. 248; Micou v. McDonald, 55 Fla. 776, 46 Sou. Rep. 291.

"The circumstances of this case do not justify the conclusion that the promissory notes as given by married woman defendant under the conditions testified to by complainant, were intended to constitute evidences of 'an agreement in writing' for the benefit of the married woman's separate property as contemplated by Section 2 of Article XI of the Constitution. The facts at most show a bestowing of agricultural and other labor on such separate property with the married woman's knowledge and consent—a fact to be inferred from the giving of the notes to evidence the value of such labor while it was in course of being so bestowed."

Then we differentiated that case from the case of Deno v. Smith, *supra*.

Another infirmity of the bill of complaint is that suit was filed more than three years after the materials were furnished and there is no showing that any notice as required by Chapter 9301, Acts of 1923, being Section 4551 C. G. L., was ever filed. In Pierson v. Reinhardt, 101 Fla. 1392, 133 Sou. 553, we held:

"Sec. 2854 R. G. S., 4551, C. G. L., definitely prescribes the manner in which a material-man furnishing materials for the improvement of a married woman's separate statutory property furnished with her knowledge and assent, may enforce his claim against the property improved.

"The last paragraph of Sec. 2854 R. G. S., 4551, C. G. L., mandatorily requires the filing of the notice of lien at most within three months after the entire performance of the labor or the entire furnishing of the materials. Though, it may be filed for record at any time within that period after a contract in writing has been entered into. This

part of the section also provides that suits in equity to enforce the rights of parties performing labor or furnishing materials as provided for in this section must be brought within twelve months from the filing of the notice of the lien.

"The above mentioned provisions of the statute are not in conflict with the organic law, but provide a definite method for the application of the organic law in such cases."

It follows that the order dismissing bill of complaint should be affirmed. It is so ordered.

Affirmed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., concurs in the conclusion.